IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.: 4:22-cv-27

| | |
|---|---|
| PATSY TALLEY,<br><br>    Plaintiff,<br><br> v.<br><br>DALE R. FOLWELL, individually and in his official capacity as TREASURER OF THE STATE OF NORTH CAROLINA; TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM (TSERS) OF NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION; and the members of the TSERS Board of Trustees both individually and in their official capacity: LENTZ BREWER, JOHN EBBIGHAUSEN, VERNON GAMMON, DIRK GERMAN, BARBARA GIBSON, LINDA GUNTER, OLIVER HOLLEY, GREG PATTERSON, MARGARET READER, JOSHUA SMITH, CATHERINE TRUITT, JEFFREY WINSTEAD, and THE STATE OF NORTH CAROLINA,<br><br>    Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br>**(Class Action)** |

## NATURE OF THE ACTION

  1. This action is brought by Plaintiff Pasty Talley ("Plaintiff" or "Talley") on behalf of herself and all similarly situated individuals ("the class members") under 42 U.S.C. § 1983 for the deprivation of property and property rights without due process.

2.     This is also an action brought by Plaintiff on behalf of herself and the class under *Corum v. University of North Carolina*, 389 S.E.2d 596, 97 N.C. App. 527 (1992) for violations of Plaintiff's rights under the North Carolina Constitution to the fruits of her labor under Article 1, Section 1, Section 3, and 19, for deprivation of property without substantive and procedural due process,  and in violation of Article 1, Section 19 for violations of her rights to equal protection.

3.     This action is brought against Defendants Dale Folwell, individually and as the State Treasurer, the Teachers' and State Employees' Retirement System of North Carolina (TSERS) and the above-named members of its Board of Trustees in their individual and official capacity[1], the North Carolina Department of State Treasurer, Retirement Systems Division and the State of North Carolina for actions taken under the authority granted in Chapter 135 of the North Carolina General Statutes.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Patsy Talley is an individual resident of Beaufort County, North Carolina and is a member of TSERS under N.C.G.S. § 135-3(1), and at the times herein complained of was fully vested in TSERS, entitled to receive and was receiving benefits under N.C.G.S. § 135-1, et seq.

2.     Pursuant to N.C. Gen. Stat. § 135-6, the Teachers' and State Employee's Retirement System ("TSERS") is responsible for the general determination, control, supervision, management, and governance of all affairs, which calculate and control

---

[1] See https://www.myncretirement.com/governance/boards-trustees-and-committees/tsers-lgers-boards-trustees#meet-the-tsers-board-members as of 2022.03.19. (Exhibit 1).

the approval and distribution of benefits to all retired full-time teachers and State Employees of all public-school systems, universities, departments, institutions, and agencies of the State.

3. Pursuant to N.C. Gen. Stat. § 135-6(a), the Teachers' and State Employee's Retirement System is administered by a Board of Trustees. Membership of the Board consists of thirteen (13) members pursuant to N.C. Gen. Stat. § 135-6(b)(1), (2), (2a), (3) and (4).

4. The Teachers' State Employee's Retirement System is a department under the North Carolina Retirement System ("RSD").

5. Defendant Dale R. Folwell is a Member of the Board of the Teachers' and State Employee's Retirement System and is the current State Treasurer pursuant to N.C. Gen. Stat. § 135-6(b)(1).

6. Defendant Lentz Brewer is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

7. Defendant John Ebbighausen is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

8. Defendant Vernon Gammon is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

9. Defendant Dirk German is a current Member of the Board of the

Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

10.     Defendant Barbara Gibson is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

11.     Defendant Linda Gunter is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

12.     Defendant Oliver Holley is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

13.     Defendant Greg Patterson is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

14.     Defendant Margaret Reader is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

15.     Defendant Joshua Smith is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

16.     Defendant Catherine Truitt is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. §

135-6(b)(3).

17.     Defendant Jeffrey Winstead is a current Member of the Board of the Teachers' and State Employee's Retirement System pursuant to N.C. Gen. Stat. § 135-6(b)(3).

18.     This Court has subject-matter jurisdiction over this action pursuant to 42 U.S.C. § 1983, as the action arises under deprivation of any rights, privileges, or immunities secured by the Constitutional and Federal Laws.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as Plaintiff Talley is a resident of the Eastern District of North Carolina and Defendants perform their statutory duties and have their primary business location in Raleigh, North Carolina which is located in the Eastern District of North Carolina, and under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of North Carolina.

## STATEMENT OF THE FACTS

20.     Plaintiff Patsy Talley was employed as a schoolteacher in the Beaufort County School system for over 25 years. She retired from the Beaufort County schools on November 1, 2008, when she was 60 years old.

21.     As a full time employee of the North Carolina school system, Plaintiff participated in the TSERS and accrued vested retirement benefits.

22.     Upon her retirement, Plaintiff, (as did all participants), had several options from which she could choose to receive her accrued benefits. N.C. Gen. Stat. § 135-5(g). Regardless of the option chosen, the benefits to which a retiree such as Plaintiff was entitled to receive were calculated by TSERS.

23.     Plaintiff elected to receive the monthly benefits payments she had accrued with TSERS under "Option 4", the "Social Security Leveling method". N.C. Gen. Stat. § 135-5(g).

24.     Under Option Four, the retiring employee receives a larger monthly payment than the maximum allowable benefits until the month of her sixty-second birthday, after which point the payment amount is decreased by an amount equal to an estimate of the employee's social security benefits. This "Leveling Method" is designed so that a retiree draws more money from the TSERS account before the retiree first becomes eligible to draw Social Security at the age of sixty-two (62). The amount drawn from TSERS is reduced once Social Security benefits begin. This option is designed to provide the retiree, "so far as possible, approximately the same amount per year before and after" Social Security becomes available. A retiring employee choosing Option Four, will apply for social security benefits at age sixty-two, so that the retiree will continue receiving the same income after the reduction in State retirement benefits, due to the augmentation of the retiree's income by social security benefits. N.C. Gen. Stat. Plaintiff did not and had had no reason to question TSER's calculation of the benefits to which she was entitled.

25.     Based on calculations by TSERS, taking into consideration Plaintiff's best four consecutive years of State compensation, her estimated Social Security benefit of $857.00 per month, and an "actuarially determined" factor (life expectancy and age), Plaintiff received $2,703.34 per month from TSERS until her 62nd birthday.

26.     After Plaintiff's 62nd birthday in December 2009, through March 2019,

Plaintiff received a reduced benefit $1,846.34 from TSERS.

27.     At some point in 2008, the Defendants, through no fault of Plaintiff's, allegedly made an error in its calculation that resulted in Plaintiff being overpaid over a period of years.

28.     When the overpayment was discovered, Defendants contend they were legally obligated to pursue recovery of the overpayment.

29.     On or about February 22, 2019, Steven C. Toole, Executive Director of the Retirement Systems Division, sent Plaintiff a letter stating that a final review of TSERS accounts had been completed and that it had determined that Plaintiff had been overpaid in the amount of $86,173.93 for the period of time from November 2008 through July 2018.

30.     The February 22, 2019, letter from Steven C. Toole also indicated that the Retirement Systems Division (RSD) intended to "recoup" the overpayment "in accordance with the RSD's recoupment procedure." N.C. Gen Stat. §135 -9(b).

31.     On or about March 19, 2019, Plaintiff received a letter from Vicki Roberts, Deputy Director of Member Services of TSERS, notifying her that beginning April 2019, Talley's checks would be reduced by $926.35. (Exhibit 2.)

32.     The March 19, 2019, letter from Vicki Roberts contained no appeal rights or any opportunity to be heard to contest the reduction.

33.     On April 8, 2019, Plaintiff's son, Brent Tally, sent an email to the Treasurer of the State of North Carolina, Dale Folwell, inquiring about the fairness of reducing Plaintiff's retirement check by almost half. Brent Talley received an

automated response stating that the email volume was heavier than normal and that he would receive a response as soon as possible.

34.    On April 18, 2019, Talley was informed that her 2019 April retirement check would be reduced by $926.35 (out of $1,910.73). At this time, Talley was finally informed that she could appeal the reduction in an email from Patrick Kinlaw.

35.    Counsel for Plaintiff replied to Patrick Kinlaw's email on behalf of Talley asking him to deem the email sent by Talley's son, Brent Tally, April 8, 2019, to be an appeal, and further asked that the RSD delay any reductions in Talley's retirement check until the matter could be resolved.

36.    Beginning April 2019, Talley's retirement check was unilaterally reduced by RSD despite the fact that Talley had been given no opportunity to be heard before the reduction of her retirement checks.

37.    Plaintiff, in her 70s, depends on retirement benefits for living expenses. Allegedly due to Defendant's "administrative error", the reduction in Plaintiff's on-going benefits caused her to receive less per month than the amount of benefits to which she is entitled, had been promised and for which she worked,

38.    On April 24, 2019, Mr. Kinlaw notified Plaintiff that the final agency decision was that the reduction would occur in the amount of 50% of her retirement check $926.35, and that Talley should consider herself fortunate in that regard because the Retirement System Division ("RSD") "could have recouped,[pursuant to N.C. Gen. Stat §135-9(b)] the full amount of the retirement allowance," ( i.e., reduced her on-going benefits to zero) but it had graciously limited itself to only 50% percent."

The determination of the amount recouped from on-going benefits was unilateral, arbitrary, and capricious.

39.     In June 2019, Plaintiff filed a Petition in the Office of Administrative Hearings, 19DST3536, in an attempt to stop Defendants from taking Plaintiff's property without an opportunity to be heard, seeking a post-deprivation due process hearing on the taking of her property and property rights.  Plaintiff also sought her attorney's fees.

40.     On August 26, 2019, Theresa Rogers, Chief of Compliance, out of the blue, agreed to reduce Plaintiff's monthly recoupment to 10% of her TSERS monthly benefit, as authorized with respect to wages by N.C. Gen. Stat. § 135-9(c).  Her decision was equally as arbitrary and capricious and the original April 24, 2019, decision of Patrick Kinlaw.

41.     On February 19, 2020, the Administrative Law Judge dismissed Plaintiff's Petition on the grounds that " 'a contested case before the Office of Administrative Hearings in the executive branch is "not a not a proper method of challenging the constitutionality of a statute." (Exhibit 3.)

42.     Defendants' actions in unilaterally miscalculating Plaintiff's benefits over a period in excess of ten years, and then arbitrarily and capriciously seizing a substantial percentage of on-going benefits to which Plaintiff was entitled to remedy their error, deprived Plaintiff of her rights to both pre-termination and post-termination due process to which she was entitled under State and federal law and deprived her of property tights  in violation of both the North Carolina and United

States Constitutions.

43.    42. N.C. G.S. 135-5(n) contains a statute of limitations which provides that: "[n]o action shall be commenced by the State or the Retirement System against any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after such overpayment was made." Thus, if Defendants brought an action against Plaintiff to recover their overpayment, they would have had to prove the amount overpaid during the preceding three years; and then attempt to collect the same. Here, Defendants, by unilateral action and without due process, seized sums exceeding three times that amount from Plaintiff's retirement income, depriving Plaintiff of current retirement benefits.

44.    RSD's own Final Agency Decision letter reveals that in an egregious lapse of professional standards the professionals of RSD had multiple opportunities to correctly calculate Petitioner's benefits prior to and beginning in 2010 and during the ensuing nine years, but it never did so until it brought its error to the attention of Plaintiff.

45.    Plaintiff necessarily relied on RSD's work and expertise and suffered financial distress as a result of RSD's errors as well as a violation of her constitutional rights due to the lack of pre-deprivation and post-deprivation due process.

46.    Moreover, under State law, the doctrine of equitable estoppel applies to the facts in this case such that the Defendants should be estopped from recovering the overpayment to Plaintiff because the recovery of the funds from Plaintiff constitutes a loss to Plaintiff and the estoppel will not impair the exercise of the

governmental powers of the Defendant.

47. Pursuant to N.C. Gen. Stat. § 135-6, the Teachers' and State Employee's Retirement System ("TSERS"), and its board members, are responsible for the general determination, control, supervision, management, and governance of all affairs, which control the approval and payment of benefits to all full-time teachers and State Employees in all public-school systems, universities, departments, institutions, and agencies of the State.

48. Plaintiff and the class members have no responsibility for or control over the calculation of and subsequent amount of benefits paid each month to them by Defendants.

49. Plaintiff and the class members have clean hands in that they made no representations nor took any actions to cause any of the equities in this case to fall on the side of the Defendants and took no actions upon which Defendants relied to their detriment.

50. Defendants including the TSERS and the State have fully funded and amply and generously funded the TSERS system such that the operation of the TSERS system now or in the future will not be impaired by estopping them from recovering the alleged overpayments to Plaintiff.

51. Defendants are responsible by law for the general determination, control, supervision, management, and governance of the TSERS and they alone control the approval and payment of benefits to all full-time teachers and State Employees in all public-school systems, universities, departments, institutions, and

agencies of the State.

52.     Defendants' actions to arbitrarily and capriciously confiscate any random amount up to 100% of Plaintiff's monthly on-going retirement benefits to re coup  payments calculated and made negligently by Defendants and the employees assigned to performed the statutory duties assigned by the legislature falls so far outside of the outer limits of legitimate government that in fact no process could cure the deficiency which is a violation of Plaintiff's rights to be free from arbitrary and capricious action by the government.

53.     If Plaintiff or the class members were receiving wages, under the statutes upon which Defendants rely, Defendants take the position that they are permitted to recover from between 10% up to 100% of such wages under N.C. G.S. § 135-9(c).

54.     However, if Defendants filed an action against Plaintiff or the class members to recover any alleged overpayment, under N.C. G.S. § 135-5(n), Defendants would be prohibited from commencing any action against "any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after suchoverpayment was made."

55.     Defendants did not file an action for recovery because they seized Plaintiff's benefits without filing such an action, which seizure was in violation of the US and NC Constitutions.

56.     Even though not a current employee receiving wages, Plaintiff sought Defendants' agreement to garnish only 10% of her monthly retirement pension in this

case, but Defendants refused such agreement prior to her filing a contested case hearing. Only after Plaintiff commenced litigation did Defendants unilaterally stop its garnishments in excess of 10%.

57.    Defendants routinely garnish arbitrary and capricious amounts from the amounts of money paid to individuals like Plaintiff and have no system for notifying individuals of their right to appeal such garnishments or their rights to negotiate the terms of repayment, or even whether repayment is required under the circumstances. (Exhibit 4.)

58.    Because Plaintiff was a retiree receiving a pension, instead of wages, Defendants treated her differently by telling her that they were entitled to take 100% of her pension, and then eventually initially settling on 50% of her pension.

59.    Again, after Plaintiff commenced litigation, Defendants unilaterally reduced their garnishment to 10% of Plaintiff's retirement pension.

60.    In fact, with regard to any entity other than the State, Defendants and any court-ordered equitable distribution and child support payments, under N.C. G.S. § 135-9(a), "the pension, or annuity, or a retirement allowance . . . or any optional benefit or any other right accrued or accruing to any person under the provisions of this Chapter, and the moneys in the various funds created by this Chapter, *are exempt from levy and sale, garnishment, attachment, or any other process whatsoever,* and shall be unassignable except as in this Chapter specifically otherwise provided."

61.    All allegations of each paragraph of this Complaint are incorporated into

each Count thereof, as though fully set out therein.

## COUNT ONE
### Deprivation of Due Process
### Guaranteed by the U.S. Constitution
### (42 U.S.C. § 1983)

62.     Plaintiff, as a former employee of the State of North Carolina and therefore a member of the Retirement System for Teachers and State Employees, had a vested property interest in her accrued retirement benefits; such benefits were calculated and paid by Defendants.

63.     For years, Plaintiff and the class members have been and are being deprived of property by the state without any pre-deprivation or post-deprivation due process or notification of their rights to contest such garnishments by the State.

64.     Pension benefits are so sacrosanct they are only subject to garnishment or attachment to pay equitable distribution or child support to support other individuals, except that Defendants routinely garnish and attach pension benefits when they allege such benefits have been negligently calculated by them and mistakenly overpaid through no fault of the garnishee.

65.     To the extent, Defendants rely on certain statutory provisions including but not limited to N.C. G.S. § 135-9 and § 135-5(n) to justify their actions in failing to provide Plaintiff and the class members with any pre-deprivation due process and post-deprivation due process only when represented by counsel, such statutes as applied by Defendants deny Plaintiff's and the class members' due process.

66.     The constitutional due process rights of Plaintiff and the class members have been violated as a result of Defendants' actions.

67. Plaintiff and the class members have suffered damages as a result of the Defendants' unconstitutional deprivation of their property without due process.

## COUNT TWO
**Deprivation of Due Process
Guaranteed by the N.C. Constitution
(*Corum* claim)**

68. Defendants have routinely seized property belonging to Plaintiff and the class members in the form of portions of benefits paid under Chapter 135 of the N.C. General Statutes, without due process.

69. The N.C Supreme Court has interpreted several provisions of the North Carolina Constitution as guarantees of due process, including Article I, Sections 1, 3 and 19.

70. Defendants provided Plaintiff and the class members no pre-deprivation due process and Defendants only provided Plaintiff with a final agency decision which provided notice that she was entitled to a contested case hearing at the N.C. Office of Administrative Hearings because she was represented by counsel who asserted her rights to due process.

71. To the extent, Defendants rely on certain statutory provisions including but not limited to N.C. G.S. § 135-9 and § 135-5(n) to justify their actions in failing to provide Plaintiff and the class members with any pre-deprivation due process and post-deprivation due process only when represented by counsel, such statutes as applied by Defendants deny Plaintiff and the class members' due process.

72. The constitutional due process rights of Plaintiff and the class members have been violated as a result of Defendants' actions.

73.    Plaintiff and the class members have suffered damages as a result of the Defendants' unconstitutional deprivation of their property without due process.

**COUNT THREE**
**Deprivation of Equal Protection and Substantive Due Process**
**Guaranteed by U.S. Constitution**
**(42 U.S.C. § 1983)**

74.    Under the U.S. Constitution, Plaintiff and the class members are guaranteed equal protection under the law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

75.    The statutes upon which Defendants rely to garnish and attach the retirement pension of Plaintiff and the class members treat individuals differently depending on whether the individual is a member or beneficiary of the retirement system or alternatively, is a current employee of the State or political subdivision thereof.

76.    The statutes upon which Defendants rely to garnish and attach the benefits paid to Plaintiff and the class members and treat them differently are arbitrary and capricious and lacking in any rational basis as they depend on whether the State is the Plaintiff or Defendant with regard to the overpayment.

77.    The statutes upon which Defendants rely to garnish and attach the benefits paid under Chapter 125 to Plaintiff and the class members and treat individuals differently are arbitrary and capricious and lacking in any rational basis as they depend on whether the Plaintiff and the class members obtain legal representation and attempt to negotiate a payment amount different from the 100%, 50%, or any other percentage that Defendants claim they are entitled to garnish.

78.     To the extent, Defendants rely on certain statutory provisions including but not limited to N.C. G.S. § 135-9 and § 135-5(n) to justify their actions, such statutes as applied, deny Plaintiff and the class members the equal protection of the law and are arbitrary and capricious in violation of the rights of Plaintiff and the class members to substantive due process.

79.     The constitutional rights of Plaintiff and the class members to equal protection and substantive due process have been violated as a result of Defendants' actions.

80.     Plaintiff and the class members have suffered damages as a result of the Defendants' denial of their rights to equal protection and to be free from arbitrary and capricious government action which violates their substantive due process rights.

## COUNT FOUR
### Deprivation of Equal Protection and Substantive Due Process Guaranteed by N.C. Constitution
### (*Corum* Claim)

81.     Under the N.C. Constitution, Plaintiff and the class members are guaranteed equal protection under the law under section 19 of Article 1.

82.     The statutes upon which Defendants rely to garnish and attach the benefits paid under Chapter 135 to Plaintiff and the class members treat individuals differently depending on whether the individual is a member or beneficiary of the retirement system or alternatively, depending on whether the individual is a current employee of the State or political subdivision thereof.

83.     The statutes upon which Defendants rely to garnish and attach the

benefits paid to Plaintiff and the class members treat individuals differently depending on whether the State or Defendant is the plaintiff with regard to the overpayment and when the overpayment was made.

84.    The statutes upon which Defendants rely to garnish and attach the retirement pension of Plaintiff and the class members treat individuals differently depending on whether the Plaintiff and the class members obtain counsel and attempt to negotiate a payment amount different from the 100%, 50%, or any other percentage that Defendants arbitrarily decide to garnish and attach.

85.    To the extent, Defendants rely on certain statutory provisions including but not limited to N.C. G.S. § 135-9 and § 135-5(n) to justify their actions, such statutes as applied, deny Plaintiff and the class members the equal protection of the law and are arbitrary and capricious in violation of their rights to substantive due process.

86.    There is no rational basis for treating former or current employees/beneficiaries differently with regard to the collection of alleged overpayments in amount or kind and the failure to treat individuals differently based on whether they protest the garnishing/attaching of their retirement pension or wages is likewise irrational.

87.    The constitutional rights of Plaintiff and the class members to equal protection and substantive due process have been violated as a result of Defendants' actions.

88.    Plaintiff and the class members have suffered damages as a result of the

Defendants' denial of their rights to equal protection and to be free from arbitrary and capricious government action which violates their substantive due process rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

1.     That this Court issue an injunction prohibiting Defendants from continuing to seize benefits paid under Chapter 135 of the N.C. General Statutes to Plaintiff and the class members;

2.     That the Court enter an injunction prohibiting Defendants from garnishments of alleged overpayments of benefits to Plaintiff and the class members under Chapter 135 of the N.C. General Statutes beyond the three years preceding the notice of overpayment provided in G.S. § 135-5(n);

3.     That the Court enter an injunction prohibiting Defendants from garnishments of any benefits paid to Plaintiff and the class members under Chapter 135 of the N.C. General Statutes without pre-deprivation and post-deprivation due process;

4.     That this Court provide Plaintiff and the class members damages for the deprivation of their constitutional rights to substantive due process and equal protection in the terms of the garnishments for alleged overpayments for benefits paid under Chapter 135 of the N.C. General Statutes;

5.     That this Court award the Plaintiff and the class members reasonable attorney's fees and any other costs related to this action; and

6.   That this Court award Plaintiff and the class members such other and further relief as may be deemed just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted, this the 21st day of March 2022.

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM
N.C. Bar 13417
209 Lloyd St., Ste 350
Carrboro, NC 27510
Telephone: (919) 810-3139
Email:  valerie@newsouthlawfirm.com


/S/ JUNE K. ALLISON
June K. Allison
NEW SOUTH LAW FIRM
N.C. Bar 9673
233 S. Laurel Ave.
Charlotte, NC  28207
Telephone: (704) 277-0113
Email:  june@newsouthlawfirm.com