FILED
OFFICE OF ADMINISTRATIVE HEARINGS
02/19/2020 3:44 PM

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF BEAUFORT | IN THE OFFICE OF<br>ADMINISTRATIVE HEARINGS<br>19 DST 03536 |
| Patsy Talley<br>    Petitioner,<br><br>v.<br><br>Dale R Folwell in his capacity as Treasurer of the State of NC NC Office of State Treasurer Retirement Systems Division Teachers and State Employees Retirement System of NC and the State of NC<br>    Respondent. | **FINAL DECISION<br>SUMMARY JUDGMENT** |

**THIS MATTER** is before the undersigned on the *Respondent's Motion for Summary Judgment* and *Memorandum in Support of Respondent's Motion for Summary Judgment*, filed November 25, 2019; the *Petitioner's Response to Respondent's Motion for Summary Judgment*, and *Petitioner's Motion For Summary Judgment and Motion for Attorney's Fees*, filed December 5, 2019; Respondent's *Reply to Petitioner's Response to Respondent's Motion for Summary Judgment and Response to Petitioner's Motion for Summary Judgment and Motion for Attorney's Fees*, filed December 16, 2019; *Petitioner's Reply to Respondent's Response to Petitioner's Motion for Summary Judgment*, filed February 10, 2020; and, *Addendum to Petitioner's Reply to Respondent's Response to Petitioner's Motion for Summary Judgment*, filed February 13, 2020.

### RECITATION OF UNDISPUTED FACTS

The following account of the events giving rise to this dispute is drawn from the *Affidavit of Teresa R. Rogers*, the Chief of Compliance in the Retirement Systems Division, and a custodian of its records, filed on Nov. 25, 2019.

1. The Petitioner Patsy W. Talley retired from the Beaufort County schools effective November 1, 2008, when she was 60 years old. She elected to accept the monthly benefit payments she had accrued with the Teachers' and State Employees' Retirement System ("TSERS") under "Option 4," the "Social Security Leveling method." N.C. Gen. Stat. § 135-5(g), Option 4. The "leveling" effect is achieved by drawing more money from the TSERS account before the retiree first becomes eligible to draw Social Security at age 62, and a lesser amount after her Social Security benefit begins, with these amounts calculated to provide the retiree, "so far as possible, approximately the same amount per year before and after" Social Security benefits become available.

2. Based on Respondent's calculation of Petitioner's best four consecutive years of State compensation, her estimated Social Security benefit of $ 857.00 per month, and an "actuarially determined" factor (presumably, her life expectancy based on her attained age), Ms. Talley received $ 2,703.34 per month from TSERS until her 62nd birthday. That birthday came in December 2009, and from January through April of 2010, she received $ 1,846.34 from TSERS ($ 2,703.34 - $ 857.00 = $ 1,846.34).

3. In April 2010, Respondent determined that Ms. Talley's average final compensation was $ 470.08 greater than the figure used in initially calculating her benefits. The agency recalculated the benefits that should have been paid, before and after her sixty-second birthday. The "before-age-sixty-two" amount, $ 2,721.24, and the "after-age-sixty-two" amount, $ 1,864.24, were both $ 17.90 higher. Respondent sent Petitioner check for $322.20 to compensate for the monthly underpayments that had accumulated from November 2008 through April 2010. Respondent contends, without contradiction, that with this titration, Petitioner was properly paid her benefits through April 2010.

4. Beginning in May 2010, TSERS began erroneously paying Petitioner the recalculated "***before***-age-sixty-two amount of $ 2,721.24" monthly, while she was also drawing Social Security retirement benefits. Consequently, she was receiving a total of $3,578.24, rather than the "level" amount of $ 2,721.24 roughly comparable to her ***before***-age-sixty-two benefits. The General Assembly subsequently granted retirees cost-of-living adjustments ("COLAs") or one-time cost-of-living supplements in 2012, 2014, 2016 and 2017, which cumulatively increased the miscalculated monthly benefits Ms. Talley was receiving from TSERS to $ 2,803.69.

5. Ms. Rogers avers that in August 2018, the agency "realized the error and corrected the benefit payment," adjusted for the COLAs, to $ 1,920.73 per month. Respondent calculates that it overpaid Ms. Talley by $ 86,173.93 between May 2010 through July 2018. See a summary of the overpayments at page 3 of the document constituting agency action, dated April 24, 2019, appended to Respondent's Prehearing Statement, filed July 24, 2019.

6. Initially, Respondent withheld one half of the monthly TSERS benefit. On August 26, 2019, Ms. Rogers spoke to Petitioner and agreed to reduce the repayment amount to 10% of the TSERS benefit, as authorized by N.C. Gen. Stat. § 135-9(c).

### ISSUES AND ARGUMENTS

7. In support of its summary judgment motion, the Respondent cites its "statutory obligation to recoup … the overpayment amount" imposed by N.C. Gen. Stat. § 143-64.80(b):

> No State department, agency, or institution, or other State-funded entity may forgive repayment of an overpayment of State funds, but shall have a duty to pursue the repayment of State funds by all lawful means available, including the filing of a civil action in the General Court of Justice.

2

N.C. Gen. Stat. § 135-9 specifies that this affirmative duty may be met by offsetting and overpayment "against any retirement allowance, return of contributions or any other right accruing under this Chapter [135]." This section effectively conditions the right to receive the TSERS retirement benefits on the State's prerogative to recover overpayments.

8. In her *Response* to Respondent's *Motion*, Petitioner first argues that the statute of limitations for the State to file suits to recover such overpayments significantly limits TSERS' right to recover benefits from Petitioner. The statute provides:

> No action shall be commenced against the State or the Retirement System by any retired member or beneficiary respecting any deficiency in the payment of benefits more than three years after such deficient payment was made, and no action shall be commenced by the State or the Retirement System against any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after such overpayment was made. This subsection does not affect the right of the Retirement System to recoup overpaid benefits as provided in G.S. 135-9.

N.C. Gen. Stat. § 135-5(n) (2019). Petitioner argues that Respondent cannot recoup overpayments made more than three year before it files an action for recovery.

9. Our Court of Appeals has considered Petitioner's argument under factually similar circumstances and came down firmly on the side of the Respondent.

> We agree with the State that the term "action" in N.C. Gen. Stat. § 135-5(n) is inapplicable to the State's reduction of future state benefits. When used in this context, the phrase "no action shall be commenced" has a special meaning, drawn from N.C. Gen. Stat. § 1-2, which describes an action as "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." The State's reduction of [retiree] Trejo's benefits to recoup the overpayment and apply the offset going forward is not a proceeding in a court of justice and thus is not the commencement of an action for purposes of the statute of limitations.

> Moreover, N.C. Gen. Stat. § 135-9 permits the State to recoup any overpayment through the reduction of other state benefits owed to the recipient "[n]otwithstanding any provisions to the contrary" and N.C. Gen. Stat. § 135-5(n) provides that its three-year limitation "does not affect the right of the Retirement System to recoup overpaid benefits as provided in G.S. 135-9." Thus, the State is permitted to use recoupment to recover an overpayment regardless of whether N.C. Gen. Stat. § 135-5(n) might limit the State's ability to recover that same overpayment through other legal means in a court proceeding. Accordingly, we reject Trejo's argument that the State's reduction in her benefits is time barred.

3

*Trejo v. NC Dep't of State Treasurer Ret. Sys. Div.,* 808 S.E.2d 163, 168 (N.C. Ct. App. 2017), *review denied,* 813 S.E.2d 243 (N.C. 2018).

10. Petitioner offers a constitutional argument that she obtained a vested right to retain the overpaid benefits, citing *Bailey v. State*, 348 N.C. 130, 141, 500 S.E.2d 54, 60 (1998), *Faulkenbury v. Teachers' & State Emples*. Ret. Sys., 345 N.C. 683, 483 S.E.2d 422 (1997), and their progeny. She also argues that the statutes allowing Respondent to stop the overpayments before affording petitioner a due process hearing are constitutionally defective. This may preserve these arguments for judicial review, but a contested case before the Office of Administrative Hearings in the executive branch is "not a not a proper method of challenging the constitutionality" of a statute. *Beard v. North Carolina State Bar*, 320 N.C. 126, 357 S.E.2d 694 (N.C., 1987) "[I]t is the province of the judiciary to make constitutional determinations." *Meads v. North Carolina Dep't of Agric*., 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998); *Bailey v. State of North Carolina*, 330 N.C. 227, 246, 412 S.E.2d 295, 306 (1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 547 (1992). An Administrative Law Judge follows the constitutional rulings of the Judicial Branch but does not make them.

11. Petitioner seeks "an award of attorney's fees under N.C. Gen. Stat. § 6-19.1," which authorizes such relief under certain circumstances for "a party who is contesting state action" in a "civil action" or "pursuant to G.S. § 150B-43," which authorizes the review in Superior Court of a contested case decision by an Administrative Law Judge. That Court is authorized include in an award "attorney fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B." Assuming that an Administrative Law Judge can make an attorney's fee award pursuant to this statute, it requires that the movant be the "prevailing party" in the "action."[1]

12. Under the Administrative Procedure Act, an Administrative Law Judge can award reasonable attorney's fees in cases of this kind when it is found that a State agency has "substantially prejudiced the petitioner's rights *and* has acted arbitrarily or capriciously[.]" N.C. Gen. Stat. § 150B-33(b)(11) (emphasis added). "The 'arbitrary or capricious' standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are patently in bad faith, or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment...." *Act-Up Triangle v. Comm'n for Health Services for the State of N.C*., 354 N.C. 699, 707, 483 S.E.2d 388, 393 (1997). In this instance, Respondent clearly sought to follow its interpretation of the applicable statutes.

13. Summary judgment is appropriate when the movant shows "that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). All evidence must be viewed in the light most favorable to the non-

---

[1] As Petitioner's citation suggests, the standard for determining whether agency's action was "substantially justified" is not "outcome determinative.". *Crowell Constructors, Inc. v. State ex rel. Cobey*, 342 N.C. 838, 845, 467 S.E.2d 675, 679 (1996). However, the statute itself requires a successful movant.

moving party, taking its asserted facts as true, and drawing all reasonable inferences in its favor. *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 583, 448 S.E.2d 280, 281 (1994). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "According to well-established North Carolina law, when a moving party has met his burden of showing that he is entitled to an award of summary judgment in his favor, the non-moving party cannot rely on the allegations or denials set forth in her pleading, *Ind–Com Elec. Co. v. First Union Nat. Bank,* 58 N.C. App. 215, 217, 293 S.E.2d 215, 216–17 (1982), and must, instead, forecast sufficient evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment." *Steele v. Bowden,* 238 N.C. App. 566, 768 S.E.2d 47, 57 (2014). "An Administrative Law Judge may grant …summary judgment, pursuant to a motion made in accordance with G.S. 1A-1, Rule 56, that disposes of all issues in the contested case." N.C. Gen. Stat. § 150B-34(e).

## FINAL DECISION

It appearing that there is no genuine issue of material fact in controversy, and that the Respondent is entitled to summary judgment as a matter of law, the Petitioner's motions for summary judgment and attorney's fees are denied, and the Petition must be, and hereby is, **DISMISSED**. N.C. Gen. Stat. §§ 1A-1, Rule 56; 150B-34(e); 26 NCAC 03 .0101(a).

## NOTICE OF APPEAL

**This is a Final Decision** issued under the authority of N.C. Gen. Stat. § 150B-34.

Under the provisions of North Carolina General Statute § 150B-45, any party wishing to appeal the final decision of the Administrative Law Judge must file a Petition for Judicial Review in the Superior Court of the county where the person aggrieved by the administrative decision resides, or in the case of a person residing outside the State, the county where the contested case which resulted in the final decision was filed. **The appealing party must file the petition within 30 days after being served with a written copy of the Administrative Law Judge's Final Decision**. In conformity with the Office of Administrative Hearings' rule, 26 N.C. Admin. Code 03.0102, and the Rules of Civil Procedure, N.C. General Statute 1A-1, Article 2, **this Final Decision was served on the parties as indicated by the Certificate of Service attached to this Final Decision**. N.C. Gen. Stat. § 150B-46 describes the contents of the Petition and requires service of the Petition on all parties. Under N.C. Gen. Stat. § 150B-47, the Office of Administrative Hearings is required to file the official record in the contested case with the Clerk of Superior Court within 30 days of receipt of the Petition for Judicial Review. Consequently, a copy of the Petition for Judicial Review must be sent to the Office of Administrative Hearings at the time the appeal is initiated in order to ensure the timely filing of the record.

**IT IS SO ORDERED.**

This the 19th day of February, 2020.

                                          J Randolph Ward
                                          Administrative Law Judge

6

# CERTIFICATE OF SERVICE

The undersigned certifies that, on the date shown below, the Office of Administrative Hearings sent the foregoing document to the persons named below at the addresses shown below, by electronic service as defined in 26 NCAC 03 .0501(4), or by placing a copy thereof, enclosed in a wrapper addressed to the person to be served, into the custody of the North Carolina Mail Service Center who subsequently will place the foregoing document into an official depository of the United States Postal Service:

Valerie Bateman
Forrest Firm
valerie.bateman@forrestfirm.com
    Attorney For Petitioner

John D. Burns
Forrest Firm, PC
john.burns@forrestfirm.com
    Attorney For Petitioner

Katherine Adele Murphy
NC Department of Justice
kmurphy@ncdoj.gov
    Attorney For Respondent

This the 19th day of February, 2020.

Daniel L. Chunko
Administrative Law Judge Assistant
N. C. Office of Administrative Hearings
6714 Mail Service Center
Raleigh NC 27699-6700
Phone: 919-431-3000