**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4:22-CV-27**

| | |
|---|---|
| **PATSY TALLEY,** | |
| **Plaintiff,** | |
| **v.** | |
| **DALE R. FOLWELL, individually and in his official capacity as TREASURER OF THE STATE OF NORTH CAROLINA; TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM (TSERS) OF NORTH CAROLINA; NORTH CAROLINA DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION; and the members of the TSERS Board of Trustees both individually and in their official capacity: LENTZ BREWER, JOHN EBBIGHAUSEN, VERNON GAMMON, DIRK GERMAN, BARBARA GIBSON, LINDA GUNTER, OLIVER HOLLEY, GREG PATTERSON, MARGARET READER, JOSHUA SMITH, CATHERINE TRUITT, JEFFREY WINSTEAD, and THE STATE OF NORTH CAROLINA,** | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS IN LIEU OF ANSWER** |
| **Defendants.** | |

COME NOW Defendants, by and through undersigned counsel, pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and submit this

1

Memorandum of Law in Support of Defendants' Motion to Dismiss in Lieu of Answer, filed contemporaneously herewith.

## STATEMENT OF THE CASE

Plaintiff Patsy Talley initiated this action by filing a complaint on March 21, 2022. The Complaint alleges four Counts: Count One, brought pursuant to 42 U.S.C. § 1983, alleges a deprivation of due process in violation of the U.S. Constitution; Count Two, labeled a "*Corum* claim," alleges a deprivation of due process in violation of the North Carolina Constitution; Count Three, brought pursuant to 42 U.S.C. § 1983, alleges a deprivation of equal protection and substantive due process in violation of the U.S. Constitution; and Count Four, another "*Corum* claim," alleges a deprivation of equal protection and substantive due process in violation of the North Carolina Constitution.

On May 17, 2022, Defendants moved for an extension of time within which to answer or otherwise respond to the Complaint. The Court granted Defendants' motion, extending the time for filing a responsive pleading up to and including June 22, 2022. This Memorandum of Law is being filed contemporaneously with Defendants' Motion to Dismiss in Lieu of Answer.

## STATEMENT OF FACTS

Taking all well-pled facts as true, as required on a motion to dismiss for failure to state a claim, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), the relevant facts are as follows.

Plaintiff was employed as a teacher for the Beaufort County Schools, and pursuant to her employment became a member of the Teachers' and State Employees' Retirement System ("TSERS"). D.E. 1, ¶¶20-21. Plaintiff retired and chose to have her TSERS retirement benefits paid according to Option 4, known as "Social Security Leveling." D.E. 1, ¶¶22-23. Defendants made an error in 2008, as a result of which, during the period of November 2008 through July 2018, Plaintiff received a higher benefit amount each month than she was statutorily entitled to receive. D.E. 1, ¶¶27, 29.

Steven C. Toole, who was at the time the Executive Director of the Retirement Systems Division of the Department of State Treasurer ("the Retirement System" or "RSD"), notified Plaintiff on or about February 22, 2019, that she had received an overpayment of benefits during the period of November 2008 through July 2018, that the total amount of the overpayment was $86,173.93, and that the Retirement System would recoup this overpayment in accordance with the Retirement System's recoupment procedure. D.E. 1, ¶¶29-30. On or about March 19, 2019, Plaintiff was notified that beginning with her April 2019 check, her monthly payment would be reduced by $926.35 per month. D.E. 1, ¶31. The March 19, 2019, letter contained no appeal rights or opportunity to be heard to contest the reduction. D.E. 1, ¶32. On April 18, 2019, Plaintiff was notified that her retirement check would be reduced by $926.35 per month, from $1,910.73. At this time, Plaintiff was informed that she could appeal the reduction. D.E. 1, ¶34.

On April 18, 2019, Plaintiff's counsel requested an administrative review on Plaintiff's behalf. D.E. 1, ¶35; D.E. 4-3, p. 21. On April 24, 2019, Patrick Kinlaw provided Plaintiff with the Retirement System's final agency decision, affirming the Retirement System's decision to recoup $926.35 per month from Plaintiff's benefit payment. D.E. 1, ¶38; D.E. 4-3, pp. 21-25. The final agency decision notified Plaintiff of her right to appeal the agency's decision to the Office of Administrative Hearings. D.E. 4-3, p. 25. Plaintiff's retirement check was unilaterally reduced by the Retirement System beginning with her April 2019 check. D.E. 1, ¶36.

In June 2019, Plaintiff filed a petition for contested case hearing in the Office of Administrative Hearings, "seeking a post-deprivation due process hearing on the taking of her property and property rights" and attorney's fees. D.E. 1, ¶39. On February 19, 2020, the Administrative Law Judge ("ALJ") issued a Final Decision granting summary judgment for the Retirement System and denying Petitioner's motion for summary judgment and attorney's fees.[1] D.E. 1, ¶41; D.E. 4-4.

The ALJ found as an undisputed fact that Respondent calculated an overpayment

---

[1] Plaintiff alleges that her contested case was dismissed. Although Plaintiff's well-pled facts must be taken as true, Plaintiff cannot contradict matters in exhibits attached to her Complaint. *See, e.g.*, *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (stating that a court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (internal quotation marks omitted)). Here, the ALJ's Final Decision is part of the Complaint, attached as Exhibit 4. D.E. 4-4. This Exhibit clearly shows that both parties moved for summary judgment, and the ALJ granted summary judgment for the Retirement System.

4

of benefits to Plaintiff in the amount of $86,173.93.  D.E. 4-4, p. 2, ¶5.  Then, acknowledging the Retirement System's statutory obligation to recoup an overpayment under N.C. Gen. Stat. § 143-64.80(b), the ALJ found that N.C. Gen. Stat. § 135-9 "specifies that this affirmative duty may be met" by offsetting an overpayment against a retirement allowance, "effectively condition[ing] the right to receive TSERS retirement benefits on the State's prerogative to recover overpayments."  D.E. 4-4, pp. 2-3, ¶7. Quoting from *Trejo v. N.C. Dep't of State Treasurer*, 256 N.C. App. 390, 396-97, 808 S.E.2d 163, 168 (2017), the ALJ dismissed Plaintiff's argument that N.C. Gen. Stat. § 135-9 implicitly contains the three-year statute of limitations that is explicit in N.C. Gen. Stat. § 135-5(n).  D.E. 4-4, pp. 3-4, ¶¶8-9.  Finally, the ALJ declined to address Petitioner's constitutional arguments on the ground that the Office of Administrative Hearings is not a proper forum for challenging the constitutionality of a statute.  D.E. 4-4, p. 4, ¶10.

On August 26, 2019, while the contested case was pending in the Office of Administrative Hearings, Theresa Rogers, Chief of Compliance, reduced the amount of the recoupment from 50% to 10% of Plaintiff's monthly benefit payment.  D.E. 1, ¶40. Plaintiff had previously sought Defendants' agreement to recoup only 10% of her monthly payment, but Defendants refused until after Plaintiff had filed a petition for contested case hearing.  D.E. 1, ¶56.

Plaintiff alleges in Counts One and Two of the Complaint that her due process

rights under the federal and State constitutions have been violated because she did not receive a pre-deprivation hearing and only received a post-deprivation hearing because she was represented by counsel.   D.E. 1, pp. 14-16.   Plaintiff alleges in Counts Three and Four of the Complaint that she has been deprived of equal protection and substantive due process in violation of the federal and State constitutions because the statutes that Defendants relied upon for recoupment in her case violated her right to equal protection and created arbitrary and capricious distinctions that lack any rational basis.   D.E. 1, pp. 16-19.

The relief Plaintiff requests is an injunction to prevent Defendants from continuing to recoup the overpayment from Plaintiff's benefit payments, damages for the alleged constitutional violations, and attorney's fees.   D.E. 1, pp. 19-20.

## ARGUMENT

The Complaint should be dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   All claims alleged against the State of North Carolina and against TSERS and the Retirement System, which are State agencies, are barred by the Eleventh Amendment.   The Eleventh Amendment also bars the federal claims alleged in Count One of the Complaint and the State law claims alleged in Counts Two and Four of the Complaint against the individual defendants in their official capacities.   The remaining claims are subject to dismissal for failure to state a claim upon which relief can be granted.

6

## I. The Eleventh Amendment Requires Dismissal of the Complaint in its Entirety Against the State and the State Agencies.

The Eleventh Amendment to the United States Constitution bars any suit in federal court against the State of North Carolina and its agencies absent a waiver. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (internal quotation marks omitted)); *see also Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (noting that the *Ex Parte Young* exception does not apply to State agencies). Plaintiff did not allege that North Carolina waived its Eleventh Amendment immunity, and the State has not done so. *See Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989). Therefore, all claims against the State of North Carolina, TSERS, and the Retirement System should be dismissed pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000) ("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).").

## II. The State Law Claims Alleged in Counts Two and Four of the Complaint Should Be Dismissed Against the Individual Defendants.

Plaintiff alleges in Counts Two and Four of the Complaint that Defendants violated her rights under the North Carolina Constitution. The Eleventh Amendment

bars these State constitutional claims against the individuals in their official capacities. The North Carolina Supreme Court has held that State constitutional claims cannot be brought against individuals in their individual capacities. In addition, the individual defendants have statutory immunity against all claims. For these reasons, the State law claims should be dismissed against all individual Defendants, in both their official and individual capacities.

### A. The Eleventh Amendment Bars the State Law Claims Against the Individual Defendants in Their Official Capacities.

Eleventh Amendment immunity "extends not only to actions against States as named parties but to actions such as that here against state officials that are in fact actions against the state as the real party in interest." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Although the U.S. Supreme Court recognized a limited exception to Eleventh Amendment immunity for state officials in *Ex Parte Young*, 209 U.S. 123 (1908), that exception does not apply to actions against State officials "seeking to compel their compliance with State law." *Antrican v. Odom*, 290 F.3d 178, 187 (4th Cir. 2002). Therefore, Eleventh Amendment immunity is fully applicable to Counts Two and Four, and hence, these State law claims must be dismissed against the individuals in their official capacities.

The Eleventh Amendment bars Counts Two and Four against the individual defendants acting in their official capacities, and therefore, these claims should be

dismissed pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil

Procedure. *See Andrews v. Daw*, 201 F.3d at 524 n.2.

### B. Plaintiff Has Failed to State a Claim Against the Individual Defendants in Their Individual Capacities for Violations of the State Constitution.

The State law claims in Counts Two and Four of the Complaint, known as *Corum*

claims, allege that Defendants violated the North Carolina Constitution. These claims

must be dismissed against the individual defendants in their individual capacities for

failure to state a claim upon which relief may be granted. "A *Corum* claim cannot be

brought against government officials in their individual capacity, only in their official

capacity." *Crain v. Butler*, 419 F. Supp. 2d 785, 793 (E.D.N.C. 2005) (citing *Corum v.

Univ. of N.C.*, 330 N.C. 761, 789, 413 S.E.2d 276, 293 (1992)); *see Swain v. Elfland*, 145

N.C. App. 383, 391, 550 S.E.2d 530, 536 (2001) ("To the extent that plaintiff alleges a

*Corum* claim against defendants in their individual capacity, the claim must be

dismissed."). As the North Carolina Supreme Court recognized in its *Corum* opinion,

"it is the state officials, acting in their official capacities, that are obligated to conduct

themselves in accordance with the Constitution," and thus, a plaintiff may assert her

constitutional rights "only against state officials, sued in their official capacity."

*Corum*, 330 N.C. at 788, 413 S.E.2d at 293.

These State law claims are also subject to dismissal against the individual

defendants for the additional reason that the members of the Board of Trustees are

immune from liability for damages.    State law provides as follows:

> Immunity. — A person serving on the Teachers' and State Employees' Retirement System Board of Trustees shall be immune individually from civil liability for monetary damages, except to the extent covered by insurance, for any act or failure to act arising out of that service, except where any of the following apply:
>> (1) The person was not acting within the scope of that person's official duties.
>> (2) The person was not acting in good faith.
>> (3) The person committed gross negligence or willful or wanton misconduct that resulted in the damages or injury.
>> (4) The person derived an improper personal financial benefit, either directly or indirectly, from the transaction.
>> (5) The person incurred the liability from the operation of a motor vehicle.

N.C. Gen. Stat. § 135-6(t).    Plaintiff did not allege that any of the five factors apply to the individual defendants.

In Counts Two and Four of the Complaint, Plaintiff has failed to state a claim against the individual defendants acting in their individual capacities.    Therefore, these claims must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.    The Federal Claims Alleged in Counts One and Three of the Complaint Should Be Dismissed.

Plaintiff alleges in Counts One and Three of the Complaint that Defendants violated her rights under the U.S. Constitution to procedural due process, equal protection, and substantive due process.    The Eleventh Amendment bars the procedural due process claim alleged in Count One of the Complaint against the individuals in their

10

official capacities and precludes a monetary damages award based on either Count.   The remaining federal claims are subject to dismissal for failure to state a claim on which relief can be granted.

### A. The Eleventh Amendment Bars the Federal Claim in Count One of the Complaint Against the Individual Defendants in Their Official Capacities and Precludes an Award of Monetary Damages for Either Federal Claim.

Plaintiff alleges in Count One of the Complaint that Defendants violated her right to due process under the U.S. Constitution.   The Eleventh Amendment bars this federal claim against the individuals in their official capacities because the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply.   Under the *Ex Parte Young* exception, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective."   *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

The *Ex Parte Young* exception does not apply to Count One of the Complaint because the alleged violation of Plaintiff's federal rights in this Count is not ongoing. Plaintiff specifically alleges that she did not receive a pre-deprivation hearing, and only received a post-deprivation hearing because she was represented by counsel.   D.E. 1, ¶¶39, 65; D.E. 4-4.

Plaintiff admits that she did receive a *post*-deprivation hearing.   Indeed, the

contested case in the Office of Administrative Hearings, which is a quasi-judicial forum, provided Plaintiff with an opportunity to be heard. *See* N.C. Gen. Stat. § 7A-750. Plaintiff's allegation—which Defendants dispute—that she only received a post-deprivation hearing because she was represented by counsel, does not change the fact that she received notice and a hearing. Plaintiff's allegations demonstrate that her right to a post-deprivation hearing was not violated.

Even if Plaintiff were entitled to a *pre*-deprivation hearing, and assuming that the internal administrative appeal Plaintiff received in April 2019 was insufficient to satisfy her alleged right to a pre-deprivation hearing, the resulting violation of Plaintiff's due process right is not ongoing. Any violation of Plaintiff's right to a pre-deprivation hearing ended when the alleged deprivation of property occurred without a hearing having first occurred.

In addition, the *Ex Parte Young* exception does not allow for an award of monetary damages to Plaintiff based on either Count One or Count Three, because monetary damages do not constitute prospective relief. *See Kimble v. Solomon*, 599 F.2d 599, 603 (1979) (stating that the Eleventh Amendment "precludes retrospective relief in the nature of monetary award against the state, even if the suit is brought against a state officer rather than the state itself").

The Eleventh Amendment bars Count One against the individual defendants acting in their official capacities, and therefore, these claims should be dismissed pursuant to

Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Andrews v. Daw*, 201 F.3d at 524 n.2. Additionally, the Eleventh Amendment prevents an award of monetary damages based on either Count One or Count Three.

### B. The Procedural and Substantive Due Process Violations Alleged in Counts One and Three of the Complaint Should Be Dismissed for Failure to State a Claim.

To establish a violation of a right to either procedural or substantive due process, Plaintiff must first establish that she has a property interest. *See, e.g.*, *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322, 328 (2005). Because Plaintiff's allegations do not establish a property interest in the overpayment, her due process claims should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff alleges that she has a vested property interest in her accrued retirement benefits. D.E. 1, ¶62. "It is well-settled that the Fourteenth Amendment itself does not create property interests. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Tri-County Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 436 (4th Cir. 2002) (internal quotation marks omitted). Plaintiff's asserted property interest derives from holdings by North Carolina's appellate courts that employees who vest in a retirement system, by working the requisite number of years while a member of the retirement system, acquire contract rights to receive benefits from that retirement system. *See Simpson v. North Carolina Local Gov't Employees' Ret. Sys.*, 88 N.C. App. 218, 223, 363 S.E.2d 90, 93

(1987), *aff'd*, 323 N.C. 362, 372 S.E.2d 559 (1988) (per curiam); *Faulkenbury v. Teachers' & State Employees' Ret. Sys.*, 345 N.C. 683, 690, 483 S.E.2d 422, 427 (1997).

Plaintiff has not disputed that she received an overpayment of benefits. She clearly has no property interest in the funds she erroneously received in excess of the amount to which she was statutorily entitled as her retirement allowance.[2] Nevertheless, Plaintiff appears to contend that, despite having received an overpayment of benefits in the past, she has a right to continue receiving benefit payments in the statutorily determined amounts forever into the future. There is no basis in law for this contention.

The North Carolina Court of Appeals has held that the employee's contract rights in the retirement system are determined by the statutory provisions governing the retirement system at the time the employee vests. *See Wells v. Consolidated Judicial Retirement Sys.*, 136 N.C. App. 671, 673, 526 S.E.2d 486, 488-89 (2000), *aff'd*, 354 N.C. 313, 553 S.E.2d 877 (2001). Thus, while Plaintiff is statutorily entitled, and therefore has a contract right, to receive a retirement allowance determined by the relevant statutory formula, *see* N.C. Gen. Stat. §§ 135-5(b1) to 135-5(b21), that right is

───────────────────────

[2] TSERS is a defined benefits plan. When a member of TSERS becomes eligible to retire, the retirement allowance (pension) that the member is entitled to receive is determined by a calculation provided by statute. See, for example, N.C. Gen. Stat. § 135-5(b21), which provides that the unreduced retirement allowance for someone retiring on or after July 1, 2019, is the product of 0.0182, the final average compensation, and the total years of creditable service. "Average final compensation" and "creditable service" are defined in N.C. Gen. Stat. § 135-1(5) and § 135-1(8), respectively.

14

conditioned on the authority of TSERS to recoup any overpayments of benefits through N.C. Gen. Stat. § 135-9(b), which statutory provision is also a part of the contract according to *Wells*.[3]   Therefore, the Retirement System does not infringe upon any property interest when it recoups the overpayment by reducing Plaintiff's monthly retirement benefit in accordance with N.C. Gen. Stat. § 135-9(b).

Because Plaintiff does not have a property interest in the overpayment, her procedural due process claim alleged in Count One and her substantive due process claims alleged in Count Three must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. The Equal Protection Claim Alleged in Count Three of the Complaint Should Be Dismissed for Failure to State a Claim.

Plaintiff alleges in Count Three of the Complaint that "[t]he statutes upon which Defendants rely to garnish and attach the retirement pension of Plaintiff . . . treat individuals differently depending on whether the individual is a member or beneficiary of the retirement system or alternatively, is a current employee of the State or political subdivision thereof."   D.E. 1, ¶75.   Plaintiff appears to allege that because subsections

---

[3] A member who is not a law enforcement officer vests in TSERS with five years of membership service.   N.C. Gen. Stat. § 135-5(a)(1).   Plaintiff became a member of TSERS on January 25, 1984.   DE 4-3, p. 62.   Thus, the earliest Plaintiff could have vested is January 1989.   The recoupment provision, now codified in N.C. Gen. Stat. § 135-9(b), was part of the TSERS statute at the time Plaintiff vested, having been enacted by the General Assembly in 1985.   *See* N.C. Sess. Law 1985-649, secs. 5, 12.

(b) and (c) of N.C. Gen. Stat. § 135-9 create a distinction between those in receipt of benefits from the Retirement System and those who are employed by the State or a political subdivision thereof, the statute violates her equal protection rights.

With regard to equal protection challenges to statutes, the U.S. Supreme Court has held:

> As a general rule, legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (internal quotation marks and citation omitted).

Plaintiff has not alleged a classification that jeopardizes a fundamental right or is based on a protected class, and therefore, her equal protection claim should be reviewed under the rational basis standard, pursuant to which "courts generally accord the legislation a strong presumption of validity." *Wilkins v. Gaddy*, 734 F.3d 344, 347 (4th Cir. 2013). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is *any reasonably conceivable state of facts that could provide a rational basis for the classification*. *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) (emphasis added) (citations omitted).

16

N.C. Gen. Stat. § 135-9 survives rational basis review.    Subsection (b) provides in relevant part:    "Notwithstanding any provisions to the contrary, any overpayment of benefits or erroneous payments to a member in a State-administered retirement system … may be offset against any retirement allowance … to the same person …." Subsection (c) provides in relevant part:

> Notwithstanding any provisions to the contrary, if a member or beneficiary is employed by the State or any political subdivision of the State, then any overpayment of benefits or erroneous payments to . . . the member or beneficiary shall be offset against the net wages of the member or beneficiary.    If a member or beneficiary owes an amount to the Retirement System, has been notified of this amount in writing, and has not entered into a payment plan acceptable to the Retirement System, then the Retirement System shall notify the member or beneficiary's employer of the amount owed.    Upon receipt of this notice from the Retirement System, the employer shall offset the amount owed against not less than ten percent (10%) of the net wages of the member or beneficiary until the Retirement System notifies the employer that the amount has been paid in full.

The material differences between the two provisions are that the Retirement System may withhold even a *de minimus* amount from ongoing benefit payments in order to recoup an overpayment pursuant to subsection (b), but if the overpayment is to be recovered through the garnishment of wages pursuant to subsection (c), the amount recouped must be at least 10% of net wages.    In addition, before proceeding with garnishment of wages, the Retirement System is required to notify the member and give the member an opportunity to enter into a payment plan that is acceptable to the Retirement System.

17

In this case, the Retirement System initially withheld 50% of Plaintiff's monthly retirement benefit payments as an offset, and later reduced that to 10%. If Plaintiff were a State employee instead of a retiree, these same amounts could have been obtained through the garnishment statute. Therefore, Plaintiff has not suffered any damages as a result of the classification created by Section 135-9. In any case, the classification does not offend the Equal Protection Clause.

When the Retirement System has made an overpayment to an individual who is currently receiving benefits, Section 135-9(b) authorizes the Retirement System to recoup the overpayment simply by reducing the amount the Retirement System pays the individual. By contrast, if the Retirement System seeks to recover the overpayment through a garnishment of wages pursuant to Section 135-9(c), this process involves a third party, namely, the employer. To effectuate the garnishment, the employer will incur some administrative burden in withholding funds from the employee's paycheck and remitting those funds to the Retirement System. It is reasonably conceivable that the General Assembly imposed a minimum on the amount of an offset in the garnishment provision on the ground that, if the employer is going to incur some administrative burden, the amount to be collected should be more than *de minimis* to justify that burden. Because there is "a reasonably conceivable state of facts that could provide a rational basis for the classification" created by N.C. Gen. Stat. § 135-9, *FCC v. Beach Commc'ns*, 508 U.S. at 313, this statutory classification survives rational basis review.

18

Plaintiff has failed to state a claim for an equal protection violation upon which relief can be granted. Therefore, the equal protection claim in Count Three should be dismissed pursuant to Rule 21(b)(6) of the Federal Rules of Civil Procedure.

### D. Counts One and Three of the Complaint Fail to State a Claim Against the Individual Defendants in Their Individual Capacities Because Plaintiff Has Not Alleged that the Individual Defendants Acted Personally in the Deprivation of Plaintiff's Rights as Required for a § 1983 Claim.

Counts One and Three of the Complaint are brought pursuant to 42 U.S.C. § 1983, and allege that Defendants violated Plaintiff's federal rights to procedural due process, equal protection, and substantive due process. These Counts must be dismissed against the individual defendants in their individual capacities for the additional reason that Plaintiff has not alleged personal involvement in the alleged deprivation of rights by the individual defendants.

The Fourth Circuit has held:

> In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section. Consequently, [the defendant] must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights in order to be liable.

*Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citations omitted); *see also Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971) ("To be liable under [§ 1983], plaintiffs must prove that the defendants directed or personally participated in the deprivation of plaintiffs' rights. Only personal

19

involvement is contemplated by this section."), *aff'd*, 451 F.2d 1011 (4th Cir. 1971).

Here, Plaintiff has not alleged that any of the named individual defendants acted personally to deprive her of her rights. Other than the identification of the parties, the only specific mention of Treasurer Folwell is a reference to a letter that Plaintiff's son sent to him, D.E. 1, ¶33, and the only specific mention of the members of the TSERS Board of Trustees is a statement regarding their duties, D.E. 1, ¶47. While the TSERS Board of Trustees is responsible for the general administration and proper operation of TSERS, N.C. Gen. Stat. § 135-6(a), the Board is not involved in the day-to-day operations of RSD. *See* 20 N.C. Admin. Code 2A.0103 ("Whenever the statutes specify that the board of trustees itself will make specific findings in specific matters relating to specific persons, the director may make the decisions administratively in accordance with law and the rules, regulations and previous decisions of this board.").

All of the allegations related to violations of Plaintiff's federal rights are general statements about the acts of "Defendants" or "RSD":

- "Beginning in April 2019, Talley's retirement check was unilaterally reduced by RSD despite the fact that Talley had been given no opportunity to be heard before the reduction of her retirement check." D.E. 1, ¶36.

- "Allegedly due to Defendant's 'administrative error,' the reduction in Plaintiff's ongoing benefits caused her to receive less per month than the amount of benefits to which she is entitled, had been promised and for which she worked." D.E. 1, ¶37.

- "Defendants' actions in unilaterally miscalculating Plaintiff's benefits over a period in excess of ten years, then arbitrarily and capriciously seizing a substantial

20

percentage of on-going benefits to which Plaintiff was entitled to remedy their error, deprived Plaintiff of her rights to both pre-termination and post-termination due process to which she was entitled under State and federal law and deprived her of property tights [sic] in violation of both the North Carolina and United States Constitutions." D.E. 1, ¶42.

- "Here, Defendants, by unilateral action and without due process, seized sums exceeding three times that amount from Plaintiff's retirement income, depriving Plaintiff of current retirement benefits." D.E. 1, ¶43.

- "Plaintiff necessarily relied on RSD's work and expertise and suffered financial distress as a result of RSD's errors as wells as a violation of her constitutional rights due to the lack of pre-deprivation and post-deprivation due process." D.E. 1, ¶45.

- "Defendants' actions to arbitrarily and capriciously confiscate any random amount up to 100% of Plaintiff's monthly on-going retirement benefits to recoup payments calculated and made negligently by Defendants and the employees assigned to performed [sic] the statutory duties assigned by the legislature falls so far outside of the outer limits of legitimate government that in fact no process could cure the deficiency which is a violation of Plaintiff's rights to be free from arbitrary and capricious action by the government." D.E. 1, ¶ 52.

- "Defendants did not file an action for recovery because they seized Plaintiff's benefits without filing such an action, which seizure was in violation of the U.S. and N.C. Constitutions." D.E. 1, ¶55.

- "Because Plaintiff was a retiree receiving a pension, instead of wages, Defendants treated her differently by telling her that they were entitled to take 100% of her pension, and then eventually settling on 50% of her pension." D.E. 1, ¶58.

- "Again, after Plaintiff commenced litigation, Defendants unilaterally reduced their garnishment to 10% of Plaintiff's retirement pension." D.E. 1, ¶59.

These generalized allegations cannot establish that any of the individual defendants had

personal knowledge or involvement in the alleged deprivation of Plaintiff's rights. *See*

*Wright*, 766 F.2d at 850; *see also Garraghty v. Va., Dep't of Corr.*, 52 F.3d 1274, 1280

(4th Cir. 1995) (affirming dismissal of § 1983 claim against defendants whose investigation led to the termination of plaintiff-employee because "there is no evidence that any acts by [these defendants] caused [plaintiff] to be denied due process").

Plaintiff has failed to state a § 1983 claim against the individual defendants. Therefore, Counts One and Three of the Complaint against the individual defendants in their individual capacities must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

For the reasons given above, the complaint should be dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted, this 22nd day of June, 2022.

JOSHUA H. STEIN
Attorney General

/s/ Katherine A. Murphy
Katherine A. Murphy
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6806
Fax: (919) 716-6755
E-mail: kmurphy@ncdoj.gov
N.C. State Bar No. 26572
Attorney for Defendants

## CERTIFICATE OF SERVICE

I certify that on 22 June 2022, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO**

**DISMISS IN LIEU OF ANSWER** with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to the following CM/ECF participants:

Valerie L. Bateman
valerie@newsouthlawfirm.com
NEW SOUTH LAW FIRM
209 Lloyd St., Ste. 350
Carrboro, NC    27510

June K. Allison
june@newsouthlawfirm.com
NEW SOUTH LAW FIRM
233 S. Laurel Ave.
Charlotte, NC    28207

Attorneys for Plaintiff

Respectfully submitted,

/s/ Katherine A. Murphy
Katherine A. Murphy
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC    27602-0629
Telephone: (919) 716-6806
Fax: (919) 716-6755
E-mail: kmurphy@ncdoj.gov
N.C. State Bar No. 26572
Attorney for Defendants

23